Nelson, J.,
delivered the opinion of the Court.
It is not, and can not' be, seriously controverted in this case, that, on the 4th day of October, 1860, E. P. Winn, in his life time, and the defendant, Williams, executed their joint notes to the complainant, amounting in the aggregate to $2,239.68; that it was expressed upon the face of said notes, that they were to bear interest at the rate of ten per centum per annum; that, on or about the 14th November, 1862, the complainant, contrary to his will, received Confederate “money,” in payment of said notes, and surrendered them to Winn; and that the duress under which he acted was the military order set out in the bill, addressed to him by D. W. Holman, Major commanding the Confederate forces at Chapel Hill, in the vicinity of complainant, threatening him with arrest and being taken to the headquarters of the Department, if he refused to receive the money; that said order was procured by Wynn, and delivered, either by him or under his authority, to complainant.
The propositions principally discussed before us arise out of the evidence taken in connection with the following statement in the amended answer: “That, since the *494 last term of this Court, they have discovered that said notes were given in renewal of preexisting debts, owed by said. Ebenezer P. Wynn to complainant, for money loaned at various times previous to the consolidation and renewal of .the same, in the Summer or- Fall of 1860; and when they were so renewed, there was included in the renewal notes interest at the rate of ten per cent, per annum, from the time of said several loans; and the renewal notes stipulated on their face for the payment, in future, of ten per cent. • interest.”
.The Code, 1950, provides 'that a defendant sued for money may avoid the excess over legal interest, by^a plea setting forth the amount of usury; but, as no question has been raised in the argument as to the want of a plea, or upon the vague and general statement in the answer, which contains no description of the notes renewed, or of the amount of usurious interest, and does not even rely upon the defense of usury by name, or offer to pay the amount actually due; we will proceed to consider the case upon the hypothesis that the defense is properly made.
The “proof, as to the terms of the contract between complainant and E. P. Wynn, is not by any means clear and satisfactory. It is shown that complainant was, and for a number of years had been, to some extent, a moneylender., One witness borrowed $1,000 from him in 1847, and paid him ten per cent. Another states that he borrowed money from him twice, at that rate, in twenty years, but does not state the amount, and is not able to say whether he borrowed any when it was lawful to loan at ten per cent. James C. Taylor testifies that *495 he has borrowed money from bim at different times, and always paid him ten per cent., except at one time, when he paid him six per cent. "William Taylor says he borrowed money from him at different times within the last twelve or fifteen years, and always paid him ten per cent. He and James Taylor seem, finally, to have paid the complainant in Confederate money. J. F. Jackson,, a son of complainant, deposes that before the war, his father generally charged ten per cent., but that his rate was not always uniform, -and depended somewhat on the solvency of the parties — sometimes six per cent., but most generally ten per cent. William Simmons borrowed of bim $150, at ten per cent., two or three years before the war; and Isaac Hendricks, at some time not fixed, before the war, executed two notes at ten per cent.; but the two last witnesses, who were about to pay in Confederate money, were released of the interest or usury, on their not doing so. Thomas L. Hendricks proves that four judgments were confessed in favor of complainant on notes renewed at ten per cent., in 1860, but does not state whether any usurious interest was included in the notes.
On this evidence, the greater part of which was objected to when taken as inadmissible, it may be remarked that, if usury, in a particular transaction, can be proved by reputation, or by evidence of other transactions; the evidence shows that the custom or usage of the complainant was not uniform, and sheds no light upon the real nature of the transactions with E. P. Wynn. Nor is' their nature clearly shown by the evidence of other witnesses. "No witness was examined who was pres *496 ent when the notes were executed. Ely A. Seay, a blind man, states that he was present, on three occasions, when Wynn borrowed money of complainant, and thinks the notes in suit were executed after the Conventional Interest law was passed, and on what he styles “a re-borrowing;” but he details no particulars of the contract. James F. Jackson states that his father said there was $1,000 due on one note, and $1,200 on the other, when the notes were renewed, but he does not know whether ten per cent, interest was included. Thomas L. Hendricks heard the complainant say that Wynn got money at three or four different times, and renewed, “and put all in at ten per cent., and gave Chesley Williams for security, the amount due being over $2,000.
The only other witness examined as to this question, was J. W. Wynn, a son of the borrower, who, prior to ■his examination, executed a release. He states that at Cole’s sale, in the Fall of 1862, he heard his father apply to complainant for an extension of time until he could collect, during the Fall, the money for a lot of mules he had sold; that if he failed to make the collection, and complainant could “wait on,” he would “renew ■the notes, and pay him ten per cent, on the money, just as he had done since the first time he had borrowed money from him.” Mr. Jackson told him that he would wait on him, if he did not get the money, if he would renew the notes, with the same security that he had on the notes before, and on the same terms.
Without remarking upon the last mentioned conversation, which must have occurred not far from the date of the military order, and as to which it seems a little *497 strange that the father of witness should desire the notes to be renewed, when Williams was- already security to them, and when he must have known that he could not then lawfully charge ten per cent, on renewal, it may be said that the evidence is exceedingly defective, in not showing how much, if any, illegal interest was included in the former notes; or whether an additional sum was loaned upon their renewal; or whether ten per cent, was charged upon the previous aggregate of principal and interest, or upon the interest alone; or whether the expression that “he put all in at ten per cent., and gave Ches-ley Williams for security,” meant simply that he had renewed the former notes a,t six per cent, or ten per cent., or that he had given a note for the interest then due, or that the new note merely, was to bear interest at the rate of ten per cent.
We would hesitate greatly to pronounce a decree upon such vague, unsatisfactory and inconclusive evidence, declaring, as it has been urged we should declare, a forfeiture of the entire debt. Nor are we satisfied that such a consequence would necessarily result from a proper construction of the Act of 1859-60, c. 41, which is alleged to have been repealed soon afterwards, at the extra session of 1861, and as to which a question is before us at Knoxville in reference to the validity of the repealing Act, not necessary to be now considered. As the statute has been quoted iu former reported cases, and considered by us recently in two or three cases, we abstain from quoting its provisions at length, and simply announce our conclusions upon the questions discussed in this case, which are, briefly, as follows:
*498 1. The object of said statute Avas to relieve the people, by making it the interest of creditors not to sue, and also to induce capitalists to loan their money, or bring in money from other States and loan it, by increasing the rate of interest; and, under the first section, it Avas not required that any other part of the agreement should be stated upon the note than the contract to pay interest at the rate of ten per centum.
2. The proviso in the second section is, that: “It may be lawful to renew debts actually created for the loan of money at the rate of ten per cent, per annum, but nothing in this Act shall be so construed as to authorize any debt. or liability, not originating for money actually loaned, thus to be reneAved; and all efforts, by direct or indirect means, to take or receive a greater rate of interest than six per cent, per annum, for any debt, demand or liability, the origin of which is not for money actually loaned, shall be deemed unlawful, and shall operate as a release of the debtor from the entire amount of such debt, demand or liability.” See Acts 1859-60, p. 32, c. 41, s. 2.
Construing this proviso in the second section in connection with the fourth section, Ave hold that it was lawful to renew notes, executed for borrowed money either before or after the time at Avhich the statute went into operation, and to provide, upon the face of the new notes, that they should bear interest at the rate of ten per cent.
It was implied in the very idea of renewal, that if the notes Avere executed for borrowed money before the law took effect, the parties might treat the interest which had accrued at the time of reneAval at the rate of six *499 per cent., and include it in tbe new note, as so much of the principal, thereafter to bear interest at the rate of ten per cent. A debt or liability, not originating for money actually loaned, could not be renewed at ten per cent.; and any effort, directly or indirectly, so to renew it, operated as a release of the debtor, under the proviso of the second section, from the entire amount of the debt, demand or liability. But this forfeiture did not result where the note was for borrowed money.
3. Under the fourth section, the debt is not forfeited for taking, or contracting to receive, more than ten per cent, interest for the loan or use of the money. The contract is only made void as to the entire interest, where the contract is to take, directly or indirectly, more than ten per cent, for the loan or use of the money. The case of Turner v. Odam, 3 Cold., 455, 463, is not an authority against the construction here given. That case was determined in this Court, and it appears from the record that a petition for rehearing was presented at the same term, and the cause was re-heard at the succeeding term,[1]when a judgment was rendered directly the reverse of that announced in the opinion. We are not advised of the reasons which influenced this action of o.ur- predecessors, as we have been unable to find any written opinion giving a second construction to the statute. But we are satisfied that the conclusion stated in 3 Cold., 462, that the inclusion in the new note of the ten per cent, interest which had previously accrued on the note or notes for borrowed money, worked a forfeiture of the entire debt, *500 was erroneous. The only forfeiture was the excess of illegal interest.
In this view, it was not unlawful for the complainant, who had loaned money to the defendant, to take new notes for the aggregate amount of principal and interest at six per cent., such new notes bearing interest at the rate of ten per cent. As his custom of lending money at usurious interest was not uniform, and he had security from "Wynn, the presumption is, that he did not charge more than six per cent., and this is not overbalanced by the doubtful and uncertain evidence as to his conversations.
But, as it is in proof that the complainant sent the Confederate money to the South by one of his sons, and no effort was made to return it, let the defendants account for the amount of the notes surrendered by complainant, with ten per cent, interest thereon, up to the time the Confederate money was paid; and let the Confederate money be credited at its then marketable value, with interest at the rate of ten per cent, per annum on the residue, until the date of the decree.
The Chancellor’s decree will be modified according to this opinion, and one-half of the costs, in this court and the court below, will be paid by the complainant. The other half of the costs shall be paid by the administrator of "Wynn, out of any assets in his hands, but if there are none, it shall be paid by defendant, Williams, the security.

 See 4 Cold., xvi.